Erin Rose Ronstadt, SBN 028362
Kristin N. Cox, SBN 030240
OBER & PEKAS, PLLC
1940 E. Camelback Road, Suite 150
Phone: (602) 277-1745
Fax: (602) 761-4443
erin@oberpekas.com
kristin@oberpekas.com

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cynthia Susan Mullin, a married woman, | **Case No.** |
| Plaintiff, | |
| v. | **COMPLAINT** |
| Scottsdale Healthcare Corporation Long Term Disability Plan, an ERISA benefit plan; United of Omaha Life Insurance Company, a plan fiduciary; and HonorHealth, a plan administrator, | |
| Defendants. | |

For her claims against Defendants Scottsdale Healthcare Corporation Long Term Disability Plan (the "Plan"), United of Omaha Life Insurance Company ("Omaha"), and HonorHealth (collectively "Defendants"), Plaintiff Cynthia Mullin ("Ms. Mullin" or "Plaintiff") alleges as follows:

**JURISDICTION, VENUE AND PARTIES**

1.      This action arises under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et seq. ("ERISA").

2.      The Plan is a purported ERISA benefit plan established and maintained by Scottsdale Healthcare ("SHC") for the benefit of its employees. The Plan is a welfare benefit plan that offers group long-term disability ("LTD") benefits.

3.      Ms. Mullin was a participant and beneficiary of the Plan as an employee of SHC; her employment spanned nearly two decades. As part of her employment, she

received STD and LTD coverage. Ms. Mullin was first covered under the Policy on April 26, 2010, presumably because that is the date that HonorHealth purchased the Policy from Omaha.

4.      In 2013, SHC merged with John C. Lincoln to create HonorHealth in 2014.

5.      SHC was the Plan Administrator, Plan Sponsor, and Employer.

6.      HonorHealth is now the Plan Administrator, Plan Sponsor, and Employer.

7.      At all relevant times, Omaha administered claims for HonorHealth under the Plan, acted on behalf of the Plan, and acted as an agent for HonorHealth.

8.      Omaha fully insures LTD benefits under the Plan with a Policy, Group Contract Number GUD-09P58. It administers HonorHealth's self-funded, short-term disability ("STD") benefits from HonorHealth general assets, whereas Omaha both administers and pays for LTD benefits.

9.      As administrator of both STD and LTD benefits, Omaha handles eligibility determinations for whether a participant qualifies for both STD and LTD benefits.

10.     Ms. Mullin is a married person. She currently resides in Maricopa County, Arizona and has been a resident of Maricopa County at all relevant times.

11.     The Plan and HonorHealth, a large corporation, have their principal place of business in the state of Arizona. Omaha has its principal place of business in the state of Nebraska. Defendants Omaha and HonorHealth are licensed and authorized to do business in Maricopa County, Arizona, and reside and are found within Maricopa County within the meaning of the jurisdiction and venue provisions of ERISA, 29 U.S.C. § 1132 and 28 U.S.C. § 1391.

12.     This Court has jurisdiction over the subject matter of this action under ERISA, 29 U.S.C. §§ 1132(a), 1132(e)(1), and 28 U.S.C. §§ 2201-02 (declaratory judgments).

13.     Venue is proper in this Court under ERISA, 29 § 1132(e)(1) and 28 U.S.C. § 1391(b).

14.     HonorHealth has a duty to administer the plan prudently and in the best interest of all Plan members and beneficiaries. Omaha acted as its agent to make final decisions regarding the payment of disability benefits for the Plan and to administer the Plan. Accordingly, Ms. Mullin is informed and believes that HonorHealth and Omaha are either a "named fiduciary" of the Plan, pursuant to 29 USC § 1133(2); and/or a "deemed fiduciary" pursuant to 29 USC § 1002 (21)(A); and/or a "designated fiduciary," pursuant to 29 USC § 1105(c)(1)(B).

15.     Omaha had actual or apparent authority to act as a fiduciary on behalf of the Plan.

16.     Omaha's third-party vendors had actual or apparent authority to act as fiduciaries on behalf of the Plan and administered the Plan in providing services to Defendants.

## GENERAL ALLEGATIONS

17.     All previous and subsequent paragraphs are incorporated by reference.

### *Ms. Mullin's Employment*

18.     Ms. Mullin has been a dedicated employee of HonorHealth for nearly two decades. She began working for HonorHealth on June 6, 1994 after she finished her Bachelor's of Science in Nursing as a newly graduated registered nurse ("RN"). Five years later, she became an RN Supervisor. On or around 2012, she was promoted to the position of Clinical Director of Nursing.

19.     As an RN and supervisor, she worked 12-hour shifts caring for patients, doing payroll, staff development, evaluations, schedules, patient placement, discipline, and several other duties. As a Clinical Director of Nursing, she was in charge of 48 beds, an outpatient unit, a central monitoring unit, and cardiac rehabilitation. She was responsible for the budget, patient satisfaction, the day-to-day operations of each area, and business plans for redevelopment.

OBER & PEKAS, P.L.L.C.
1940 E. Camelback Road, Ste. 150
Phoenix, AZ  85016
(602) 277-1745

20.     Ms. Mullin worked as a Clinical Director of Nursing for HonorHealth until leaving work on March 26, 2014 due to her inability to work.

### *The LTD Plan*

21.     To be eligible for LTD benefits, Ms. Mullin must satisfy the definition of "Disability," which is a defined as follows: Disability and Disabled means that because of an Injury or Sickness, a significant change in Your mental or physical functional capacity has occurred in which You are: (a) prevented from performing *at least one* of the Material Duties of Your Regular Job on a part-time or full-time basis; and (b) unable to generate Current Earnings which exceed 99% of Your Basic Monthly Earnings due to that same Injury or Sickness.  A Clinical Director of Nursing is considered to be Ms. Mullin's Regular Job under the Plan.

22.     After a Monthly Benefit has been paid for 2 years, Disability and Disabled means that Ms. Mullin is unable to perform all of the Material Duties of any Gainful Occupation. Gainful Occupation means an occupation, for which You are reasonably fitted by training, education or experience, is or can be expected to provide You with Current Earnings at least equal to 85% of Basic Monthly Earnings within 12 months of Your return to work.

23.     As of 2014, the Plan language for HonorHealth has become more stringent – and therefore less favorable for claimants - than it was prior to the merger.

24.     Material Duties means the essential tasks, functions, and operations relating to an occupation that cannot be reasonably omitted or modified. In no event will We consider working an average of more than 60 hours per pay period in itself to be a part of material duties. One of the material duties of Your Regular Job is the ability to work for an employer on a full-time basis.

25.     Regular Job means the job description defined by the Policyholder for the position You are performing prior to Disability.

OBER & PEKAS, P.L.L.C.
1940 E. Camelback Road, Ste. 150
Phoenix, AZ 85016
(602) 277-1745

OBER & PEKAS, P.L.L.C.
1940 E. Camelback Road, Ste. 150
Phoenix, AZ 85016
(602) 277-1745

26.     Ms. Mullin is entitled to receive 66 2/3% of her Basic Monthly Earnings under the Plan, because she participated in the Buy-Up Plan coverage. Basic Monthly Earnings means Ms. Mullin's gross income received from the HonorHealth for the month immediately prior to the month in which her Disability began.

27.     The Plan provides an incentive for participants to work while Disabled. As a work incentive, a participant receiving a wage or earning profit will receive the Monthly Benefit, unless the sum of (a) the Gross Monthly Benefit while Disabled plus (b) Current Earnings exceeds 100% of Basic Monthly Earnings. If this sum exceeds 100%, of the Basic Monthly Earnings, then the Monthly Benefit will be reduced by that excess amount.

28.     Under the Plan, Ms. Mullin is entitled to receive LTD benefits until she reaches her Social Security Normal Retirement Age ("SSNRA"), which is 67 years old, or until she is no longer Disabled.

29.     Ms. Mullin was required to participate in an administrative appeal process. Thereafter, she had no other administrative appeal options available to her. As such, she filed this lawsuit under ERISA.

### Ms. Mullin's Application for Benefits and Omaha's Denial

30.     In the merger between SHC and John C. Lincoln, nursing departments were restructured, including Ms. Mullin's department.

31.     On March 22, 2014, Ms. Mullin was in a motor vehicle accident (the "MVA"). She was rear-ended and had gone through a back surgery on or about late-2013.

32.     On or about March 26, 2014, following a meeting with between Ms. Mullin and Human Resources, the new Chief Nursing Officer from the merger informed Ms. Mullin in a "transition" meeting that Ms. Mullin would need to either step down from her position or participate in a "performance improvement process."

**OBER & PEKAS, P.L.L.C.**
1940 E. Camelback Road, Ste. 150
Phoenix, AZ 85016
(602) 277-1745

33.     Ms. Mullin's employee reviews, including her most recent the end of 2013, had never indicated any issues with her performance and had actually demonstrated her above average performance.

34.     Due to the recent MVA, which exacerbated her medical conditions, and the stress from changes at work, Ms. Mullin ended up in the emergency room. On March 27, 2014, Ms. Mullin submitted a claim for STD benefits. Omaha accepted the claim on behalf of SHC, now HonorHealth.

35.     Omaha was aware of Ms. Mullin's employment circumstances when approving STD benefits on behalf of SHC, now HonorHealth.

36.     Prior to the MVA, Ms. Mullin suffered from a multitude of medical conditions, but the MVA caused a significant, worsening change to her existing conditions and also caused new health issues. The stress from political changes at work only added to Ms. Mullin's health issues.

37.      After paying Ms. Mullin's remaining STD benefits (the maximum number of days which STD benefits will be paid is 180 days in a rolling calendar year), Omaha sent Ms. Mullin a letter dated June 4, 2014, advising her that it was reviewing her claim for transition to LTD benefits. It was at this transition that HonorHealth stopped paying benefits and Omaha began fully insuring the Plan. After review of the file, Omaha denied Ms. Mullin's LTD benefits in a letter dated September 9, 2014 (the "Denial").

38.     The Denial found Ms. Mullin's Regular Job to be classified as "medium." After a lengthy recitation of medical records without any meaningful analysis, Omaha denied Ms. Mullin's claim, seemingly because there was not a "significant change" in her conditions, and because "the documentation is lacking in acute physical and psychiatric findings to support any restrictions and limitations that would prevent [Ms. Mullin] from performing [her] Regular Job as a Clinical Director of Nursing."

39.     Ms. Mullin retained legal counsel on or about September 2014, who revoked all authorizations Omaha had on file in a letter dated October 3, 2014: "this

OBER & PEKAS, P.L.L.C.
1940 E. Camelback Road, Ste. 150
Phoenix, AZ 85016
(602) 277-1745

letter serves as your notice that any prior authorizations signed by Ms. Mullin to obtain medical records, medical information, personal information, or other information of any kind are hereby revoked **to the extent that such authorization allows you to contact any sources of information in any manner other than by writing.** You may continue to use the previously signed releases or authorizations to obtain records and reports in writing, or by telephone conference arranged through our office and electronically recorded, so as to be made part of the record. Any other direct communication outside of writing will be considered an invasion of Ms. Mullin's privacy." (emphasis in original).

### Ms. Mullin's Appeal and Final Denial

40.     Ms. Mullin timely appealed the Denial in a letter dated March 6, 2015 and provided supplemental evidence in memorandum dated March 24, 2015, which Omaha accepted for review (collectively the "Appeal"). In the Appeal, with the assistance of counsel, Ms. Mullin explained her medical history, providing substantiating evidence that a "significant change" occurred in her conditions. She listed exhaustively the many "acute physical findings" in the medical records, contrary to Omaha's assertion that the record lacked such findings. Because Omaha had denied the claim without a job description, and because HonorHealth refused to provide one to Ms. Mullin prior to the Appeal, she submitted evidence of her job duties for Omaha's consideration. She explained how, under the Plan, she was definitively unable to perform *at least one* of the Material Duties of Your Regular Job on a part-time or full-time basis, qualifying her to benefits under the Plan. Ms. Mullin addressed all of Omaha's reasons for the Denial, to the extent that she could glean the reasons from Omaha's convoluted Denial.

41.     On appeal, Omaha secured information that it should have secured prior to Denial. It requested information about the MVA, and Ms. Mullin's legal counsel facilitated that request by providing document. Thereafter, on or about May 14, 2015, Omaha requested that Ms. Mullin attend an independent neuropsychological evaluation (the "INE"). At first, Omaha was using vendor Psybar, LLC to arrange the INE, but it

OBER & PEKAS, P.L.L.C.
1940 E. Camelback Road, Ste. 150
Phoenix, AZ  85016
(602) 277-1745

ultimately used MLS Group of Companies, Inc. ("MLS"). However, both companies sent out notices for different INE dates with different doctors.

42.     On May 15, 2015, Omaha then noticed the need for an additional 45 days to render a determination based on its request for an INE.

43.     Once Omaha determined its desired INE vendor, doctor, and date, Ms. Mullin's counsel sent a letter dated June 4, 2015, objecting to the INE on several grounds that had already been conveyed to Omaha through telephonic conversations. Besides the untimeliness and unreasonableness of the INE, Ms. Mullin had already undergone neuropsychological testing on February 14, 2015. This testing was provided to Omaha. Notwithstanding objections, Ms. Mullin agreed to undergo the INE, although without any understanding of why the testing was relevant to the claim.

44.     Ms. Mullin participated in the INE with Dr. H. Daniel Blackwood on June 9, 2015. The INE testing was overall favorable to Ms. Mullin's claim.

45.     Unbeknownst to Ms. Mullin, Omaha also secured a peer review from Dr. Neal Small on appeal. Without valid authorization, he contacted Ms. Mullin's treating provider directly. Omaha also secured a Occupational Analysis and Addendum – the first in the file – from Mr. Patricia Thal. Both file reviews were obtained through University Disability Consortium ("UDC"), a vendor that Omaha routinely uses for the denial of claims.

46.     Omaha upheld its Denial in a letter dated June 26, 2015 (the "Final Denial"). Omaha found new reasons for Denial previously undisclosed to Ms. Mullin and relied heavily on Dr. Small's file review and unauthorized contact with Dr. DeBrino, as well as Dr. Blackwood's INE report. Omaha requested a job description for the first time from HonorHealth and provided new vocational analysis, this time based on a "light strength occupation" instead of "medium."

47.     On or about June 30, 2015, HonorHealth terminated Ms. Mullin's employment, because her leave had been exhausted and LTD benefits denied.

48.     The Policy is purportedly the Plan, which is out of compliance with ERISA requirements for a written plan document. *See* 29 U.S.C. § 1102(b)(1)-(4).

49.     Omaha acted under a structural conflict of interest in both administering and paying out on claims under the Plan.

50.     On information and belief, HonorHealth has not properly conferred Omaha with discretionary authority to interpret the Plan and to make eligibility determinations regarding the Plan.

51.     Ms. Mullin is entitled to *de novo* review of her claims, because HonorHealth did not properly confer discretionary authority to Omaha. In the alternative, Ms. Mullin is entitled to *de novo* review, because given Omaha's structural conflict of interest and its "wholesale and flagrant violations of the procedural requirements of ERISA," *de novo* review is warranted.

52.     Omaha should not be entitled to any deference in its decision-making in light of the facts and circumstances of this claim.

53.     Ms. Mullin's medical conditions never improved and, in fact, have worsened March 2014.

54.     Ms. Mullin is totally disabled from her Regular Job and any Gainful Occupation for which she is reasonably fitted by training, education, and experience.

55.     Ms. Mullin continues to be disabled as defined by the Plan for LTD benefits eligibility.

56.     Ms. Mullin should be entitled to LTD benefits until she is 67 years old.

57.     Ms. Mullin exhausted her administrative remedies under the Plan.

58.     Ms. Mullin satisfied all of the jurisdictional prerequisites to filing a claim, and her claim is timely before this Court.

59.     Ms. Mullin is entitled to additional benefits from HonorHealth as a disabled employee including, but not limited to, health insurance, life insurance, supplemental LTD benefits, and retirement/pension credits.

OBER & PEKAS, P.L.L.C.
1940 E. Camelback Road, Ste. 150
Phoenix, AZ 85016
(602) 277-1745

OBER & PEKAS, P.L.L.C.
1940 E. Camelback Road, Ste. 150
Phoenix, AZ 85016
(602) 277-1745

60.     Ms. Mullin is entitled to seek any and all relief allowed pursuant to ERISA, including equitable remedies, in order to enforce her rights under the Plan.

**COUNT I**
**(Recovery of Plan Benefits)**
**(Defendants Omaha and the Plan)**

61.     All previous and subsequent paragraphs are incorporated by reference.

62.     The Plan is an Employee Welfare Benefit Plan as defined in ERISA, 29 U.S.C. § 1002.  Defendants are the Plan, Plan administrators, or Plan fiduciaries of the Plan under ERISA.

63.     The Plan represents LTD coverage and a promise to provide LTD benefits until Ms. Mullin is no longer disabled under the terms of the Plan.

64.     Ms. Mullin became disabled in 2014 and continues to be disabled. She is unable to work pursuant to the terms of the Plan.  She has claimed the benefits under the Plan to which she is entitled.

65.     Ms. Mullin reasonably expected that her conditions met the requirements of Disability as defined by the Plan for LTD benefits, and that she would receive benefits under the Plan until age 67 or until she was no longer disabled.

66.     Despite the coverage of Ms. Mullin's disability, Omaha has improperly terminated LTD benefits to Ms. Mullin in breach of the Plan and ERISA.  Omaha's collective conduct was arbitrary, capricious, an abuse of discretion, not supported by substantial evidence, and was clearly erroneous. In light of Omaha's structural conflict of interest and wholesale and flagrant procedural violations of ERISA, Ms. Mullin should be entitled to *de novo* review.

67.     Omaha's structural conflict of interest manifests in its handling of both STD and LTD benefits for HonorHealth. Despite requests for the STD file, and despite the STD file's clear relevance to Omaha's handling of Ms. Mullin's LTD claim, Omaha has not disclosed relevant documents related to the STD claim. Moreover, Ms. Mullin is informed and believes that, as a result of the merger between SHC and John C. Lincoln,

OBER & PEKAS, P.L.L.C.
1940 E. Camelback Road, Ste. 150
Phoenix, AZ 85016
(602) 277-1745

Omaha was aware that the definition of Disability under the Plan would become more stringent.

68.     Ms. Mullin met the definition of disability under the Short-Term Disability Program (the "STD Program") and should be eligible for LTD benefits. Omaha's approval of STD benefits but denial of LTD benefits is an abuse of discretion and a result of its structural conflict of interest. In short, the STD Program requires a participant to be disabled from the "Essential Functions" of her job, which means the fundamental job duties of Ms. Mullin's held and detailed in her position's job description. Under the STD Program, "[i]f your physician cannot substantiate your disability by objective findings, you may be required to see a physician selected by the claims management company for an independent evaluation. Failure to cooperate with such requests may result in an interruption in benefits." "Proof of disability may consist of records from the physician, written reports, x-rays and any other medical records, as well as evidence that you continue to be under the appropriate care and treatment of a physician." Ms. Mullin was approved for all of her STD benefits, meaning that she provided objective medical evidence to Omaha that she could not perform the essential functions of her job. Omaha found her disabled for STD benefits, yet not for LTD benefits.

69.     Omaha has been determined to deny Ms. Mullin's claim because of its bias against Ms. Mullin due to her employment issues, which constitutes a breach of fiduciary duty. It failed to provide Ms. Mullin with a description of any additional material or information "necessary" to "perfect the claim" and to do so "in a manner calculated to be understood by the claimant." Omaha "hid the ball" from Ms. Mullin by failing to advise her of what was needed to approve the LTD claim, instead changing its reasons for denial. Omaha's adversarial actions precluded Ms. Mullin from responding to Omaha's rationale for denial at the administrative level.

OBER & PEKAS, P.L.L.C.
1940 E. Camelback Road, Ste. 150
Phoenix, AZ 85016
(602) 277-1745

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

70.     Omaha wrongfully denied Ms. Mullin's disability benefits without providing a coherent explanation for its denials, and in a way that conflicts with the plain language of the Plan, violating 29 U.S.C. §§ 1109, 1132.

71.     Omaha did not properly consider all of the available evidence when denying Plaintiff's benefits. In doing so, Omaha failed to conduct a full and fair review. By way of example, it did not address several medical records and diagnostic testing results as part before terminating the LTD claim.

72.     Omaha misstated medical evidence for its own financial benefit. It overstated and excessively relied on its own file reviewers. Moreover, Omaha tainted it medical file reviewers in the review process by giving the reviewers inaccurate information regarding Ms. Mullin, while also failing to provide its reviewers with all of the relevant evidence.

73.     On information and belief, Omaha did not insulate the appeals reviews from its initial determination and used the same supervisor to orchestrate the denials. *See 29* C.F.R. 2560.503-1(h)(3)(ii), (h)(4) (requires claim fiduciaries to "[p]rovide for a review that does not afford deference to the initial adverse benefit determination and that is conducted by an appropriate named fiduciary of the plan who is neither the individual who made the adverse benefit determination that is the subject of the appeal, nor the subordinate of such individual.").

74.     Omaha routinely emphasized reports that favored a denial of benefits while deemphasizing other reports that suggested a contrary conclusion.

75.     Omaha failed to investigate Ms. Mullin's claim adequately, including its failure to conduct an in-person medical evaluation on all relevant medical conditions *prior to* denial, which would have been beneficial to a full and fair review of Ms. Mullin's claim. It then unreasonably requested an IME on appeal in violation of ERISA.

OBER & PEKAS, P.L.L.C.
1940 E. Camelback Road, Ste. 150
Phoenix, AZ  85016
(602) 277-1745

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

76.     The INE's purpose was an attempt to gather last minute, unfavorable evidence - effectively "stacking the deck" against Ms. Mullin - instead of fairly evaluating the evidence already provided on Appeal.

77.     Omaha has unreasonably withheld relevant documents throughout the entire claim, including *but not limited to* the STD file, complete internal notes, and the job description. Omaha's failure to comply with ERISA's disclosure requirements and poor management of the file demonstrates its abuse of discretion and improper claims handling.

78.     Omaha failed to properly consider the opinions of Ms. Mullin's treating and examining physicians. It also failed to reasonably consider Ms. Mullin's reported symptoms and limitations, and side effects of her medications, in determining whether she was disabled under the Plan. Omaha knew about Ms. Mullin's worsening issues and additional surgeries before and following the Appeal but failed to give proper weight to those findings. Indeed, Omaha acted arbitrarily and capriciously when it selectively reviewed Ms. Mullin's medical records, relying only on those portions of her medical records that supported a denial of benefits.

79.     Omaha improperly demanded objective medical evidence of Ms. Mullin's pain and engrafted terms onto the Plan. For example, Omaha denied LTD benefits because Ms. Mullin did not have a "severe mental impairment," which is not a requirement of the Plan. The Plan requires that Ms. Mullin experience a significant change to her mental capacity. Nowhere does the Plan define "severe mental impairment" – this is a superfluous term used by Omaha as a basis for its denials. Likewise, the Plan does not specifically preclude "work stress" as a reason for Disability; while Omaha may not be sympathetic to Ms. Mullin's work stress, there is no Plan exemption on this basis.

80.     On information and belief, the file reviewers and vendors were financially incentivized to deny Ms. Mullin's claim. MLS and UDC are biased companies, which

OBER & PEKAS, P.L.L.C.
1940 E. Camelback Road, Ste. 150
Phoenix, AZ 85016
(602) 277-1745

frequently provide insurance companies with reviews that are favorable for the denial of claims. Omaha's physician reviewer, Dr. Small, and Ms. Thal were provided by UDC. Dr. Blackwood was provided by MLS. Omaha knew or should have known that MLS and UDC are biased companies. As a company-wide practice, Omaha uses MLS and UDC, because it knows they provide reviews that are favorable to the denial of claims.

81.     On information and belief, Omaha uses UDC in a majority of denials and supplies a significant portion of UDC's income.

82.     Omaha used MLS and UDC in Ms. Mullin's claim, because it anticipated that the reviews would be unfavorable for the continuation of her benefits.

83.     Omaha unreasonably failed to ensure that MLS and UDC provided unbiased and/or qualified reviewing doctors for purposes of its claims administration.

84.     Dr. Small and Ms. Thal had no reasonable basis for their recommended restrictions and limitations and reached their opinions based on insufficient evidence or investigation.

85.     On information and belief, Dr. Small and Ms. Thal on numerous occasions to conduct claims reviews or other evaluations through UDC and have a history of bias against claimants.

86.     Omaha's physician reviewer, Dr. Small, spoke with Ms. Mullin's treating physician without proper authorization, which is an abuse of discretion and violation of the law.

87.     Omaha failed to reasonably or coherently explain why it credited the file reviewers over Ms. Mullin's treating physicians.

88.     The file reviewers were not given the Plan or other important records for reaching its decision that Ms. Mullin could perform sedentary work.

89.     Given Ms. Mullin's medical conditions and symptoms, she cannot perform at least one of the material and substantial duties of her regular job, or any gainful occupation.

OBER & PEKAS, P.L.L.C.
1940 E. Camelback Road, Ste. 150
Phoenix, AZ 85016
(602) 277-1745

90.     Ms. Mullin has exhausted her administrative remedies.

91.     Pursuant to the coverage provided in the Plan, to ERISA 29 U.S.C. § 1132(a)(1)(B), and to applicable federal and state common law, Ms. Mullin is entitled to recover all benefits due under the terms of the Plan, and to enforce her rights under the Plan.

92.     Ms. Mullin is entitled to reinstatement of any other employee benefits that were terminated, discontinued, or suspended as a result of the termination of her disability benefits. She is entitled to a restoration of the *status quo ante* before LTD benefits were wrongfully terminated.

93.     Pursuant to 29 U.S.C. § 1132(g), Ms. Mullin is entitled to recover her attorneys' fees and costs incurred herein from Omaha.

94.     Ms. Mullin is entitled to prejudgment interest on the benefits to which she is entitled and on her damages at the highest legal rate until paid.

## COUNT II
## (Breach of Fiduciary Duty)
## (Defendant Omaha)

95.     All previous and subsequent paragraphs are incorporated by reference.

96.     Under 29 U.S.C. §§ 1132(a)(2)-(3), this Court may enjoin any act or practice that violates ERISA or the terms of the Plan, as well as grant other appropriate equitable relief, provided that such relief is not recoverable under 29 U.S.C. § 1132(a)(1)(B).

97.     Based on the facts of this case, Ms. Mullin has "other equitable relief" available to her in several forms, including but not limited to surcharge, because the relief available under 29 U.S.C. § 1132(a)(1)(B) does not make Ms. Mullin whole for her losses from Omaha's breaching conduct. A surcharge is a kind of equitable monetary remedy against a trustee, which puts the beneficiary in the position she would have attained but for the trustee's breach. Surcharge extends to a breach of trust committed by

OBER & PEKAS, P.L.L.C.
1940 E. Camelback Road, Ste. 150
Phoenix, AZ 85016
(602) 277-1745

a fiduciary encompassing any violation of a duty imposed upon that fiduciary. In equity, this Court must make Ms. Mullin whole following Omaha's breach of trust and mold the relief necessary to protect the rights of the participant. Therefore, the Court has broad discretion to fashion appropriate relief.

98.     Omaha is a fiduciary and owes fiduciary duties to Plan participants, including Ms. Mullin. Under 29 U.S.C. § 1104(a), Omaha is required discharge its duties with the care, skill, prudence, and diligence under the circumstances that a prudent man acting in like capacity and familiar with such matters would use under 29 U.S.C. § 1104(a). Under ERISA, which is founded in trust principles, Omaha is required to administer claims in the *best interests* of beneficiaries and participants as part of its fiduciary duty.

99.     In multiple ways throughout the administration of Plaintiff's claim, Omaha breached its fiduciary duties pursuant to 29 U.S.C. § 1132(a)(2)-(3). Omaha's arbitrary and capricious claims handling generally constitutes a breach of fiduciary duty, because Omaha's claims handling was discharged imprudently and caused Ms. Mullin harm that cannot be recovered under 29 U.S.C. § 1132(a)(1)(B). Omaha's actions have caused Ms. Mullin serious harm. She has been forced to drain her savings accounts, rack up credit card debt, and her family relationships have been injured. She could lose her house now due to Omaha's denial of LTD benefits. Moreover, Ms. Mullin now owes significant attorneys' fees because of Omaha's breaching conduct. By arbitrarily and capriciously denied Ms. Mullin's benefits, Omaha breached its fiduciary duties. To the extent that Omaha's arbitrary and capricious denial of benefits caused Ms. Mullin harm unrecoverable under 29 U.S.C. § 1132(a)(1)(B), then that harm is recoverable under 29 U.S.C. §§ 1132(a)(2)-(3).

100.     On information and belief, Omaha instructs and/or incentivizes certain employee(s) to terminate fully insured LTD claims and appeals based on bias. Ms. Mullin is informed and believes that Omaha's employees are trained in administering

claims in the best interests of Omaha, not Plan participants. Omaha used information gained from the STD process undisclosed to Ms. Mullin and demonstrated bias and malice against Ms. Mullin through its employees. Instead of fully and fairly reviewing the medical evidence, Omaha found reasons to deny Ms. Mullin's claim, because of its adversarial belief that Ms. Mullin left work due to performance issues and not due to medical conditions. Omaha's failure to act prudently and in the best interests of Ms. Mullin is a breach of fiduciary duty requiring appropriate equitable relief following discovery Omaha's conduct as it relates to Ms. Mullin's claim.

101.    Omaha was unjustly enriched as a result of its breach of fiduciary duty violations, because it wrongfully withheld Ms. Mullin's benefits for its own profit.

102.    Omaha engaged in several procedural violations in an attempt to circumvent its obligations under ERISA, and these violations are by definition under 29 U.S.C. § 1132(a)(3) conduct that can be enjoined by this Court. For example, Omaha sought an IME on appeal and used the IME as a justification for "tolling" deadlines under ERISA. Omaha is attempting to circumvent its "full and fair" requirements under ERISA by creating "special circumstances" to justify a 45-day extension to respond to Ms. Mullin's appeal. Seemingly, Omaha did not even attempt to complete a timely review within the 45 days. Ms. Mullin is entitled to equitable relief, which could take the form of mandamus relief, preventing Omaha from tolling its statutory deadlines in order to get evaluations that claimants such as Ms. Mullin can never respond to following the close of the appeals process.

103.    Omaha acted with malice and in bad faith against Ms. Mullin due to her "job stress," which constitutes a violation of its fiduciary duty.

104.    ERISA "does not elsewhere adequately remedy" the injuries caused to Ms. Mullin by Omaha's breach of fiduciary duty violations.

105.    As a direct and proximate result of the breaches of fiduciary duty, Ms. Mullin suffered actual, *significant* financial harm and has incurred financial expense.

OBER & PEKAS, P.L.L.C.
1940 E. Camelback Road, Ste. 150
Phoenix, AZ 85016
(602) 277-1745

-17-

106.   Ms. Mullin is entitled to prejudgment interest on the benefits to which she is entitled and on her damages at the highest legal rate until paid in full.

107.   Pursuant to 29 U.S.C. § 1132(g), Ms. Mullin is entitled to recover her attorneys' fees and costs incurred herein from HonorHealth and Omaha.

108.   Ms. Mullin is entitled to enjoin any act or practice by Omaha, which violates ERISA or the Plan, and/or she is entitled to seek other appropriate equitable relief that is traditionally available in equity.

**COUNT III**
**(Breach of Fiduciary Duty)**
**(Defendant HonorHealth)**

109.   All previous and subsequent paragraphs are incorporated by reference.

110.   HonorHealth, as Plan Administrator, is a fiduciary and owes fiduciary duties to Plan participants, including Ms. Mullin. Under 29 U.S.C. § 1104(a), HonorHealth is required discharge its duties with the care, skill, prudence, and diligence under the circumstances that a prudent man acting in like capacity and familiar with such matters would use under 29 U.S.C. § 1104(a). Under ERISA, which is founded in trust principles, HonorHealth is required to act in the best interests of Plan participants.

111.   HonorHealth fully insures the Plan and has, at various times, used insurance companies besides Omaha. HonorHealth has not to date disclosed the service agreement, applications for insurance, and other governing Plan documents, which would outline the fiduciary obligations of each Defendant under the Plan.

112.   HonorHealth acted imprudently by failing to oversee Omaha's claims administration. HonorHealth, as the Plan Administrator, knew or should have known that Omaha handled claims against the best interests of its employees and not pursuant to the Plan. Ms. Mullin provided appeals to HonorHealth and notified HonorHealth that Omaha was not providing relevant documents, which is ultimately the Plan Administrator's responsibility.

OBER & PEKAS, P.L.L.C.
1940 E. Camelback Road, Ste. 150
Phoenix, AZ 85016
(602) 277-1745

113.    On information and belief, HonorHealth, as the Plan Administrator, did not periodically review Omaha's actions as a delegated fiduciary under the Plan.

114.    On information and belief, the Plan Administrator's failure to periodically review Omaha's actions as a delegated fiduciary under the Plan was unreasonable and constituted a breach of fiduciary duty.

115.    On information and belief, if the Plan Administrator did periodically review Omaha's actions as a delegated fiduciary under the Plan, then its periodic review was unreasonable and constituted a breach of fiduciary duty.

116.    On information and belief, the Plan Administrator is liable for Omaha's actions, because the Plan Administrator violated its fiduciary obligations by continuing Omaha's delegation as Plan Administrator and/or by failing to protect Plan participants from Omaha's conflicted and adversarial claims handling.

117.    Ms. Mullin is entitled to injunctive and/or mandamus relief under 29 U.S.C. § 1132(a)(2)-(3). She is entitled to enjoin any act or practice by Defendants that violate ERISA or the Plan, and/or she is entitled to see other appropriate equitable relief that is traditionally available in equity. Because of Omaha's breach of fiduciary duties to Plan participants, and because of HonorHealth's failure to appropriately monitor Omaha and protect Plan participants and beneficiaries from Omaha's breaching conduct in light of its dual role as STD and LTD claims administrator, the Plan Administrator should be enjoined from employing Omaha as both its administrator for STD claims and insurer on LTD claims. The Plan Administrator should further be required to implement appropriate procedures in oversight of Omaha and/or any other insurers of STD and LTD benefits under the Plan, which would maintain accountability for the administrative responsibilities it seemingly freely delegates to Omaha.

118.    Ms. Mullin relied on the Plan and HonorHealth to her detriment.

119.    Ms. Mullin was actually harmed by HonorHealth's failure to oversee Omaha's conduct. As a longstanding employee of SHC, now HonorHealth, who invested

her entire career in working for the company, she relied on HonorHealth to provide benefits that would be there for her. She is entitled to surcharge relief as a result of HonorHealth's breach of fiduciary duties.

120.    Ms. Mullin is informed and believes and Omaha has targeted claims under the Plan, including Ms. Mullin's, and HonorHealth's failure to protect its participants is a breach of fiduciary duty.

121.    Ms. Mullin is entitled to equitable relief for HonorHealth's breach of their fiduciary duties, including for the breaches of fiduciary duties committed by any agents or third parties for Defendants.

122.    Pursuant to 29 U.S.C. § 1132(g), Ms. Mullin is entitled to recover her attorneys' fees and costs incurred herein from HonorHealth and Omaha.

123.    Because HonorHealth breached its fiduciary duties, Ms. Mullin was actually harmed.

124.    Ms. Mullin is entitled to enjoin any act or practice by Defendants, which violates ERISA or the Plan, and/or she is entitled to seek other appropriate equitable relief that is traditionally available in equity.

## COUNT IV
### (Statutory Penalties)
### (Defendant HonorHealth)

125.    All previous paragraphs are incorporated by reference.

126.    Pursuant to 29 U.S.C. § 1132(c)(1)(B), "any administrator who fails to comply with a request for any information which such administer is required by this subchapter to furnish to a participant or beneficiary… may in the court's discretion be personally liable to such participant or beneficiary."

127.    Under 29 U.S.C. §1024(b)(4), "[t]he administrator shall, upon written request of any participant or beneficiary furnish a copy of the latest updated summary plan description, and the latest annual report, any terminal report, the bargaining

OBER & PEKAS, P.L.L.C.
1940 E. Camelback Road, Ste. 150
Phoenix, AZ 85016
(602) 277-1745

agreement, trust agreement, contract, or other instruments under which the plan is established or operated."

128.    Ms. Mullin, through legal counsel, requested Plan document disclosures in a letter dated October 3, 2014 pursuant to ERISA. This letter enumerated several requested documents, including Form 5500 filings and controlling Plan documents.

129.    HonorHealth, represented by outside legal counsel, responded in writing to Ms. Mullin's counsel in a letter dated November 13, 2014 providing incomplete disclosures.

130.    HonorHealth failed or refused to comply with its disclosure obligations under 29 U.S.C. § 1024(b).

131.    On information and belief, HonorHealth intentionally withheld information that Ms. Mullin was legally entitled to under ERISA.

132.    In the November 19, 2013 letter, Ms. Mullin's counsel specifically requested that if HonorHealth refused to disclose any of the requested information, that it provide an explanation as to why it believed the information was exempted from its disclosure obligations under ERISA.

133.    In responding to Ms. Mullin's Plan documents request, HonorHealth failed to disclose copies of several Plan documents required under ERISA and that Ms. Mullin is informed and believes exist. Ms. Mullin was not provided with copies of the most recent documents governing the operation of the Plan. HonorHealth disclosed what Ms. Mullin believes to be an outdated version of the Plan (Policy No. GUD-09P58, revised February 26, 2013) but without complete riders; in its disclosures, Omaha provided a more recent version of the Plan, revised October 1, 2013. The Policyholder name differs between the Policy versions. Ms. Mullin neither received documents establishing HonorHealth's purchase of the Plan nor copies of the latest annual report (Form 5500 Series). She did not receive updated and complete Summary Plan Description documents or a summary of the Plan's annual financial report. The Plan Administrator is required

by law to furnish each participant with a copy of these documents, and it has failed to do so.

134.    To date, Ms. Mullin has received inconsistent copies of Plan documents from both HonorHealth and Omaha.

135.    HonorHealth did not provide an explanation for its failure and/or refusal to disclose documents, including the Form 5500 filing for the most recent Plan year.

136.    HonorHealth acknowledges that if a participants "request[s] a copy of Plan documents or the latest annual report from the Plan and do[es] not receive them within 30 days, [she] may file suit in a Federal court. In such a case, the court may require the Plan Administrator to provide the materials and pay [a participant] up to $110 a day until [she] receive[s] the materials, unless the materials were not sent because of reasons beyond the control of the Administrator."

137.    HonorHealth is aware of its Plan Administrator responsibilities, and HonorHealth has no justifiable excuse for its failure to disclose Plan documents. HonorHealth had the benefit of legal counsel to assist in its disclosure obligations; yet, HonorHealth did not comply with its obligations under ERISA.

138.    Of the documents disclosed by HonorHealth, Ms. Mullin's right to Plan documents is memorialized under a participant's "Statement of ERISA Rights," so HonorHealth knew of its disclosure obligations.

139.    The disclosure requirements of ERISA are not empty suggestions for fiduciaries such as HonorHealth. The disclosure requirements amount to specific guidelines imposed for the purpose of ensuring that plan participants, such as Ms. Mullin, can follow and gauge the availability and character of ERISA plans, including the very structure of the benefit plan itself. Without adequate disclosure, Ms. Mullin cannot know or enforce her rights to benefits or anticipate alterations in benefits under the Plan.

-22-

140.   As the Plan Administrator, HonorHealth is liable to Ms. Mullin for its failure to properly disclose documents pursuant to 29 U.S.C. § 1132, et. seq.

141.   Under 29 U.S.C. § 1132(c)(1), the Court may impose a statutory penalty of up to $110 per day for each day that HonorHealth failed to provide a complete and proper disclosure of Ms. Mullin's Plan documents.

142.   Penalties began to accrue thirty (30) days after the date Ms. Mullin made a written request to HonorHealth for her plan documents, which is November 3, 2014.

143.   Ms. Mullin is entitled to penalties, as well as interest, costs, and attorneys' fees.

144.   HonorHealth continues to accrue penalties under ERISA until it properly discloses requested documents pursuant to ERISA.

**WHEREFORE**, on all claims, Ms. Mullin prays for entry of judgment against Defendants as set forth in this Complaint, which includes:

A.   All past and future LTD benefits under the terms of the Plan;

B.   Clarifying and determining Ms. Mullin's rights to future benefits under the terms of the Plan;

C.   Any statutory penalties that may be available to Ms. Mullin as a result of Defendants' violations of ERISA;

D.   All other equitable relief that is proper as a result of Defendants' breach of fiduciary duties;

E.   An award of Ms. Mullin's attorneys' fees and costs incurred herein;

F.   An award of prejudgment interest on benefits and damages at the highest legal rate until paid; and

G.   For such and further relief as the Court deems just, equitable, and reasonable.

OBER & PEKAS, P.L.L.C.
1940 E. Camelback Road, Ste. 150
Phoenix, AZ 85016
(602) 277-1745

Dated this 7th day of August 2015,

OBER & PEKAS, P.L.L.C.

By: *s/ Erin Rose Ronstadt*
Erin Rose Ronstadt
Attorney for Plaintiff