Erin Rose Ronstadt, SBN 028362
Kristin Nicole Kalani, SBN 030240
OBER & PEKAS, PLLC
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
Phone: (602) 277-1745
Fax: (602) 761-4443
erin@oberpekas.com
kristin@oberpekas.com

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cynthia Susan Mullin, a married woman, <br><br> Plaintiff, <br><br> v. <br><br> Scottsdale Healthcare Corporation Long Term Disability Plan, an ERISA benefit plan; United of Omaha Life Insurance Company, a plan fiduciary; and HonorHealth, a plan administrator, <br><br> Defendants. | No. CV-15-1547-PHX-DLR <br><br> **PLAINTIFF'S REPLY IN SUPPORT OF HER MOTION TO COMPEL DISCOVERY** |

Plaintiff Cynthia Susan Mullin ("Plaintiff" or "Ms. Mullin") files her Reply in Support of Her Motion to Compel Discovery.[1] Plaintiff has not asked to "open the floodgates of discovery" in this case.[2] Instead, she has set reasonable and narrowly tailored discovery to encourage the expeditious resolution of this lawsuit. Ms. Mullin's Motion to Compel Discovery should be granted.

**I. MS. MULLIN IS ENTITLED TO CONFLICT DISCOVERY ON HER CLAIM FOR BENEFITS UNDER 29 U.S.C. § 1132(a)(1)(B).**

As a threshold matter, Ms. Mullin is entitled to discovery in this Court's discretion, so that this Court can properly evaluate Defendant United of Omaha Life Insurance

---

[1] HonorHealth has expressed a willingness to comply with Ms. Mullin's requests. (*See* Doc. 56.) Therefore, Plaintiff asks this Court to allow the discovery against HonorHealth as set forth in her Motion to Compel Discovery. (*See* Doc. 50.)
[2] (*See* Doc. 55 at 1:26-27.)

Company's ("Defendant" or "Omaha") structural conflict of interest. *See Montour v. Hartford Life & Accident Ins. Co.*, 588 F.3d 623, 630-631 (9th Cir. 2009); *see also Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 673-674 (9th Cir. 2011). "*Glenn* and *Abatie*[3] require a district court to consider the conflict of interest as a factor whose weight depends on the nature, extent, and effect of the conflict on the decision-making process, which may be unmasked through discovery." *Santos v. Quebecor World Long Term Disability Plan*, 254 F.R.D. 643, 648 (E.D. Cal. 2009) (citations omitted); *see also Welch v. Metropolitan Life Ins. Co.,* 480 F.3d 942, 949-50 (9th Cir. 2007) (court awarded partial attorneys' fees by concluding that some discovery aimed at demonstrating a conflict of interest may be appropriate). Omaha asks this Court to focus on the "merits of the case" and allow no discovery into the structural conflict. However, the "merits" can only be properly considered once the Court knows how heavily to weigh the conflict of interest in its analysis. To focus exclusively on the administrative record and allow no discovery would be contrary to Ninth Circuit law and would insulate Omaha from scrutiny on its admitted structural conflict.

Omaha's reliance on *Ford* and *Chadwick*[4] to bar all conflict discovery is misplaced. The Supreme Court has rejected Omaha's line of reasoning. *See Glenn*, 554 U.S. at 113-114 (finding "Congress' desire to offer employees enhanced protection for their benefits" to outweigh "ERISA's efforts to avoid complex review proceedings"). Similarly, courts in the Ninth Circuit have found Defendants' reliance on these decisions to be unpersuasive. *See Klein v. Northwestern Mut. Life Ins. Co.*, 806 F. Supp. 2d 1120, 1126-1127 (S.D. Cal. 2011) (finding it "incongruous for Defendants to argue that [a plaintiff] can have only limited discovery because, as a beneficiary, he is entitled to an

---

[3] *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (U.S. 2008); *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955 (9th Cir. 2006).

[4] *Ford v. Motorola, Inc.*, 298 Fed. Appx. 560, 561 (9th Cir. 2008); *Chadwick v. Metro. Life Ins. Co.*, 498 F. Supp. 2d 1309, 1311 (E.D. Cal. 2007). Defendant cited to these cases throughout its Response Motion and also in objecting to Plaintiff's discovery requests. (*See* Doc. 55 at 2:7-13; 6:22-23; *see also*, Doc. 55-1, Ex. D at 1:23-24, 1:27-28, 8:21-28.)

inexpensive determination of his benefits"). The *Chadwick* and *Ford* decisions are distinguishable[5] and do not preclude Ms. Mullin from the opportunity to conduct timely conflict discovery on her claims in this lawsuit.

Omaha argues that no further discovery is needed beyond the administrative record, because Ms. Mullin has relied on the administrative record to provide examples of bias. (*See* Doc. 55 at 2:14-16 ("Every example Mullin points to of purported bias is apparent from the administrative record, which the Court will consider in its review.").) However, this is disingenuous; Ms. Mullin draws from the administrative record, because those are the only documents that Omaha has been willing to provide thus far. The Ninth Circuit has recognized this reality, which is why plaintiffs no longer have the burden on producing evidence of the administrator's motives in order to get discovery. As the Ninth Circuit explained in *Abatie*, "an ERISA plan participant is much less likely to possess [evidence of financial motive] than is the administrator." *Abatie* at 967 (citations omitted).

Nevertheless, Omaha cannot argue in good faith that Ms. Mullin has not alleged facts to create "some nexus between the structural conflict and an irregularity in the claim file."[6] (*See* Doc. 55 at 6:21-22.) It is difficult to find a paragraph in the Complaint that does not draw such a nexus. In fact, Omaha points to allegations in Ms. Mullin's

---

[5] Unlike Ms. Mullin, the plaintiff in *Chadwick* had an opportunity for discovery but simply failed to take it. *Chadwick*, 498 F. Supp. 2d at 1315. When faced with a summary judgment motion **after the close of discovery**, the *Chadwick* plaintiff moved to continue briefing for the purpose of conducting discovery for the first time. *Id.* at 1311. The court denied the request as "untimely." *Id.* at 1315 ("plaintiff conducted no discovery regarding defendant's alleged bias during the discovery period and did not request an extension of the deadline"). Additionally, the *Ford* case provides no analysis whatsoever; it is an unpublished Ninth Circuit decision where the plaintiff "presented **no support** for her position that additional discovery would reveal evidence of Plan conflicts." *Ford*, 298 Fed. Appx. at 561 (emphasis added). *Ford* is neither relevant nor instructive, because Ms. Mullin has presented sufficient factual allegations to warrant discovery, and Omaha has admitted conflict.

[6] Ms. Mullin maintains her position that no "nexus" is required. *Abatie* specifically rejected such an argument and abrogated prior precedent, which required a "nexus" before discovery was permitted. *Abatie*, 458 F.3d at 967 (citations omitted). *Ford* does not create the "nexus" requirement that Omaha reads into the case.

Complaint that Omaha was unduly influenced by its structural conflict of interest.  (*See* Doc. 55 at 7:18-24.)  Although Ms. Mullin disagrees that she must demonstrate a "nexus," Omaha cannot assert in good faith that she has not done so.  By virtue of its admission that a structural conflict exists, Omaha has conceded that it "has an incentive to pay as little in benefits as possible to plan participants because the less money the insurer pays out, the more money it retains in its own coffers."  *See Abatie* at 965-966 (citing *Doe v. Group Hosp. & Med. Servs.*, 3 F.3d 80, 86 (4th Cir. 1993) (noting that "to the extent that [the administrator] has discretion to avoid paying claims, it thereby promotes the potential for its own profit.").  Omaha's decision-making was unduly influenced by its conflict, and limited discovery is necessary to explore the extent of this conflict on Omaha's decision to deny Ms. Mullin's claim.

## II. MS. MULLIN HAS REQUESTED NARROWLY TAILORED EVIDENCE ON ALL COUNTS THAT SHOULD BE PERMITTED BY THE COURT.

Ms. Mullin has requested limited discovery into areas already previously decided by the courts in the Ninth Circuit as relevant following *Abatie*.  In *Wilcox v. Metro. Life Ins. Co.*, 2009 U.S. Dist. LEXIS 2977 (D. Ariz. 2009), following the Ninth Circuit's remand of the court's initial pre-*Abatie* denial of all discovery, Judge Campbell allowed discovery into several areas regarding the conflict of interest; Ms. Mullin's scope set forth in her Motion to Compel comports with the *Wilcox* order and other in-circuit district court orders.  *See*, *e.g.*, *Klein,* 806 F. Supp. 2d at 1127-1129; *Santos,* 254 F.R.D. at 648-651.[7] Ms. Mullin should be allowed to proceed into the areas of discovery previously identified in her Motion to Compel, which includes the requests for production sent to Omaha.  (*See*

---

[7] Notably the Courts in   and *Santos* permitted broader discovery than *Wilcox*. In *Klein*, the Court provided an instructive list of appropriate areas of discovery on the conflict issue. This included, but was not limited to, compensation paid to in-house medical reviewers, performance evaluations, claims approval statistics and in some circumstances, the approval rates of each physician, a sampling of physician reports, and training manuals and guidelines. *Klein,* 806 F. Supp. 2d at 1127-1129. The Court in *Santos* allowed similar discovery. *See Santos,* 254 F.R.D. at 648-651.

Doc. 55-1 at Ex. C.)

### A. Ms. Mullin's Requested Discovery Is Proportional To The Case.

Omaha misrepresents the value of Ms. Mullin's claim in an unpersuasive attempt to convince the Court that discovery would be too costly. (*See* Doc. 55 at 15:1-10.) The benefit of conducting discovery does not outweigh the cost, at least not for Ms. Mullin. She has a monthly benefit of $5,650 and, if she remains eligible, will receive benefits until August 2035. After reducing potential, future benefits to present value and assuming an offset for Social Security Disability Income ("SSDI") and dependent benefits not yet awarded, Ms. Mullin's claim value is in excess of $600,000. If she ultimately does not qualify for SSDI benefits, then she could still qualify for benefits under the Plan, and Omaha's potential liability would exceed $1,000,000.[8] To the extent Omaha relies exclusively on the past-due benefits to value the case and ignores its possible future liability, this is further evidence of its breach of its fiduciary duty; instead of fully and fairly considering the evidence, Omaha already plans to terminate benefits if Ms. Mullin prevails and this Court remands the matter back to Omaha to make a determination. Injunctive relief on the § 1132(a)(3) claim might be the only vehicle for protecting Ms. Mullin from Omaha's misconduct following a remand.

### B. This Court Should Order The Disclosure Of All Relevant Documents As Mandated By ERISA.

Omaha has attempted to circumvent the statutory requirements of ERISA by refusing to produce relevant documents. Omaha argues that documents "relied upon" are already in the "Administrative Record," and Ms. Mullin cannot seek discovery regarding her particular claim. (*See* Doc. 55 at § IV(A).) ERISA provides guidance in this respect by defining whether documents are "relevant." Under 29 C.F.R. § 2560(m)(8), a document is "relevant" to a claim if it:

1) Was relied upon in making the benefit determination;

---

[8] These figures contemplate future benefits and should be the amounts that Omaha considers when setting reserves aside to pay the claim.

-5-

2) Was submitted, considered, or generated in the course of making the benefit determination, **without regard to whether such document, record, or other information was relied upon in making the benefit determination;**

3) Demonstrates compliance with the administrative processes and safeguards required pursuant to paragraph (b)(5) of this section in making the benefit determination; or

4) Constitutes a statement of policy or guidance with respect to the plan concerning the denied benefit for the claimant's diagnosis, without regard to whether such advice or statement was relied upon in making the benefit determination.

(emphasis added). The claims procedures of a plan do not provide a claimant with a reasonable opportunity for a full and fair review unless they provide the claimant access to all documents, records, and other information relevant to the claimant's claim for benefits. 29 C.F.R. § 2560.503-1(h)(2)(iii).

Despite multiple requests, Omaha has refused to provide all relevant documents in this case. Omaha's repeated objections on the basis of what was "relied upon" highlights its violation of ERISA. (*See, e.g.*, Doc. 55-1, Ex. D at 6:24-28 ("all information relied upon in deciding Plaintiff's claim is contained in the Administrative Record").) Ms. Mullin has a right to relevant documents, *regardless of whether Omaha relied upon them*, and to the extent she has had to seek those documents in litigation, this is a continuing violation of ERISA. Regardless of whether Omaha *relied upon* documents, if *any* documents were *submitted, considered, or generated* in the course of making the benefit determination on Ms. Mullin's claim, then Omaha is required to disclose these documents as relevant. Much like the insurance company in *Prado v. Allied*, 800 F. Supp. 2d 1077 (N.D. Cal. 2011), Omaha's blatant refusal to comply with ERISA has inexcusably continued into this litigation. *See Id.* at 1095-1096.

Ms. Mullin should not be penalized for seeking full disclosures under ERISA. Omaha is correct that out of Ms. Mullin's thirteen Requests for Production ("RFPs"), almost half are aimed at securing a proper disclosure of "relevant" documents under ERISA. RFPs 3, 4, 5, 11, 12, and 13 only seek documents that are defined as relevant under ERISA, which Ms. Mullin has reason to believe have been withheld. (*See* Doc. 55-

1 at Ex. C.) Omaha's refusal to comply with ERISA and subsequent "hide the ball" mentality is evidenced by the fact that only after litigation commenced did it finally provide the short-term disability ("STD") claim file. It is a shame that Ms. Mullin has had to waste RFPs on seeking relevant documents, and Omaha still refuses to cooperate. Omaha should be ordered to provide all relevant documents.

### C. Omaha's Privacy Objections Are Unsubstantiated And Unwarranted.

Omaha objects to Plaintiff's requests for the personnel files, performance evaluations and compensation structure for seven employees. Omaha objects on the grounds that it would unnecessarily violate the privacy rights of its employees. To support its position, Omaha cites to case law outside of this jurisdiction and outside the ERISA context, willfully ignoring and overlooking significant case law that supports Ms. Mullin's requests. Omaha's objections are unpersuasive, unwarranted and unsubstantiated.

Omaha cites to out-of-circuit decisions, including *Thornton v. W. & S. Life Ins. Co Flexible Benefits Plan*, 2010 WL 411119 at *3 (W.D. Ky. Jan. 28, 2010) and *McQueen v. Life Ins. Co. of N. Am.*, 595 F. Supp. 2d 752, 756 (E.D. Ky. 2009) to support its contention that employee performance reviews are not an appropriate area of discovery. (Doc. 55 at 11:7-10.) However, Omaha completely misses the mark. Ms. Mullin's requests are not aimed at impeaching or undermining the credibility of the employee, but rather at determining whether they were administering claims under an improper incentive structure and whether they were pressured to deny claims. Ms. Mullin is informed and believes that the performance evaluations she has requested will show that the performance of Omaha employees are driven by policies, expectations, and measures that are antithetical to Omaha's obligations to Ms. Mullin. This is a relevant inquiry into the conflict issue and courts in the Ninth Circuit have ordered ERISA defendants to produce this information. *See Klein*, 806 F. Supp. 2d at 1128 (holding that "at a minimum, discovery is allowed into the compensation, guidance, and performance evaluations given

to the people involved in the handling of plaintiff's claim"); *see also Santos* 254 F.R.D. at 650 (holding, "[i]nsofar as Plaintiff requests information regarding all rules, practices, procedures, guidelines, standards, criteria, and memoranda regarding compensation, bonuses, raises, evaluations, promotions and promotional opportunities and/or any other incentives applicable to benefits personnel relevant to deciding Plaintiff's appeal, Plaintiff is entitled to such information"); *see also Sullivan v. Deutsche Bank Ams. Holding Corp.*, 2010 U.S. Dist. LEXIS 8414, at *6 (S.D. Cal. Feb. 2, 2010, No. 08cv2370-L (POR)) (holding that performance evaluations are closely related to the issue of conflict of interest); *see also Hughes v. CUNA Mut. Group*, 257 F.R.D. 176, 181 (S.D. Ind. 2009) (ordering an ERISA insurer to produce documents relating to employee compensation criteria or standards in effect during the pendency of plaintiff's claim).

Omaha argues that because Plaintiff's requests seek information about non-party employees, discovery of their personnel files is inappropriate and should be denied. Omaha relies on the *Rinehart*[9] case, which denied plaintiff's request for performance reviews. Omaha conveniently disregards a subsequent decision by the same court, which allowed discovery into this matter. *See Meier v. Travelers Home & Marine Ins. Co.*, 2015 U.S. Dist. LEXIS 102736, at *6-7, fn. 3. (W.D. Wash. Aug. 4, 2015, No. C15-0022RSL) ("The Court respectfully disagrees with the analysis in Rinehart…to the extent it suggests that…personnel records are unlikely to lead to the discovery of information regarding the insurer's compensation of and expectations for its adjusters."). In *Meier*, the Court found that the plaintiff had established a sufficient nexus between the information and the claim to overcome the employees' privacy concerns. *Id.* at 5-6.

Omaha finally argues that Plaintiff's desire to conduct a "fishing expedition" into the personnel files of its employees is insufficient to justify discovery into such sensitive materials. Contrary to Omaha's assertions, however, Plaintiff has articulated the

---

[9] *Rinehart v. Life Ins. Co. of N. Am.*, 2009 U.S. Dist. LEXIS 76670, 2009 WL 2240286 (W.D. Wash. 2009).

relevance of the discovery sought and has narrowed her requests to avoid unnecessary disclosures. In her request, Plaintiff seeks the "job descriptions, W-2's and/or W-9s, Employee Performance Goals and Targets and Compensation Plans" for seven individuals. Plaintiff agreed in advance that Omaha could redact the Social Security number and personal residence information for each individual. Omaha's privacy concerns, to the extent they are valid, can be remedied by a request for and entry of a protective order.

### D. *The Court Should Compel Omaha To Disclose Its Compensation Plan And Training Materials, Because Omaha Has Not Satisfied Its Burden For Trade Secret Protection*

Omaha objects to Plaintiff's requests for the Compensation Plan and training materials on the grounds that this information is confidential, proprietary, and a trade secret. On the basis of this objection and others, Omaha has improperly withheld responsive documents alleging that Plaintiff has not provided "the necessary showing of relevance and necessity for the information." (Doc. 55 at 14:9-16.) Because Plaintiff seeks purported "trade secret information," Omaha alleges that Plaintiff's burden is much heavier than in a "routine discovery dispute" not involving proprietary documents. *Id*. Citing to a case from 1961, Omaha outlines the elements that Plaintiff must prove. *Id*. Omaha has improperly shifted the burden to Plaintiff without providing sufficient support for its objections.

The party resisting discovery has the burden of showing why discovery should not be allowed, and must clarify, explain, and support its objections. *See Duran v. Cisco Sys., Inc.*, 258 F.R.D. 375, 378 (C.D. Cal. 2009) (citing *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975); *Sullivan v. Prudential Ins. Co. of Am.*, 233 F.R.D. 573, 575 (C.D. Cal. 2005). This burden is also consistent with the three-step burden shifting approach that courts in the Ninth Circuit have adopted in determining whether to compel disclosure of trade-secret information. *See*, *e.g.*, *Todd v. Tempur-Sealy Int'l, Inc.*, No. 13-CV-04984JST (MEJ), 2015 U.S. Dist. LEXIS 12108 at *2 (N.D. Cal. Feb. 2, 2015). At

the first step, the party resisting disclosure bears the burden of establishing that the information sought is a trade secret and that disclosure may be harmful. *Trevino v. ACB Am., Inc.*, 232 F.R.D. 612, 617 (N.D. Cal. 2006) (citation and internal quotation marks omitted). If the objecting party makes this showing, the burden then shifts to the party seeking disclosure to demonstrate that the trade secret is both relevant and necessary to the proper presentation of a claim or defense. *See*, *e.g.*, *Hartley Pen Co. v. U.S. Dist. Court*, 287 F.2d 324, 331 (9th Cir. 1961). The court must then "weigh the risk of disclosure of the trade secret to unauthorized parties with the risk that a protective order will impede prosecution or defense of the claims." *Todd*, 2015 U.S. Dist. LEXIS 12108, at *2 (citation omitted). "Once the moving party has established relevance and necessity, the discovery is virtually always ordered." *Id*. (citations and internal quotations omitted).

At this time, Omaha has not satisfied its burden. It has not made a showing of specific prejudice or harm. Omaha asserts generally that its compensation plans and employee training materials "contain proprietary and trade-secret information that the company protects, and… if released, would benefit its insurance competitors." (Doc. 55, 14:9-11.) Omaha goes on to allege that, "[i]f such information is revealed to the public, United loses its claim to trade secret status in future matters." (Doc. 55, 14:11-12.) Beyond that, Omaha has not provided any explanation as to how the disclosure of the Compensation Plan and its training materials will cause irreparable injury to the competitive position of the company. *See Phillips v. GMC*, 307 F.3d 1206, 1210-1211 (9th Cir. 2002) (citing *Beckman Indus., Inc. v. International Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) (holding that "broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test").

Even if Omaha were found to have satisfied its burden, the information Plaintiff seeks is both relevant and necessary to understanding the nature, extent and effect of Omaha's structural conflict of interest. Courts have found that as part of the conflict analysis, the training provided to claims and medical personnel as well as the procedures

manuals, guidelines and other documents relating to claims handling are a relevant and necessary part of discovery and the Court's later conflicts analysis. *See Klein,* 806 F. Supp. 2d at 1128; *see also Zewdu v. Citigroup*, 264 F.R.D. 622, at 628 (N.D. Cal. 2010).

### III. IN LIGHT OF THIS COURT'S ORDER, MS. MULLIN SHOULD BE PERMITTED TO DEVELOP HER CLAIM FOR BREACH OF FIDUCIARY DUTY UNDER 29 U.S.C. § 1132(a)(3) AGAINST OMAHA

In a recent Order (Doc. 58), this Court denied Omaha's motion to dismiss Count II of Plaintiff's Complaint. As part of its Order, the Court denied Omaha's request to stay discovery, thereby permitting Ms. Mullin to develop her § 1132(a)(3) claims against Omaha and HonorHealth concurrently with her claim for benefits under § 1132(a)(1)(B). *Id*. The Court advised that further factual development was necessary to determine the type of equitable relief, if any, available to Ms. Mullin. *Id*. Accordingly, Ms. Mullin requests that this Court compel the discovery against Omaha as set forth in her Motion to Compel Discovery (Doc. 50). The areas and topics that she has proposed are consistent with this Court's admonition.[10]

### IV. CONCLUSION.

Ms. Mullin offered that, on all counts, she would limit her discovery to 25 interrogatories, 25 RFPs, 25 requests for admission, and 6 depositions against Omaha at eight hours per deposition into the narrowly tailored issues of conflict and breach of fiduciary duty.[11] Contrary to Omaha's assertion, this discovery does not open the floodgates of ERISA. Ms. Mullin's Motion to Compel Discovery should be granted in all respects.

---

[10] The Court agreed with Omaha that an injunction prohibiting Omaha from using biased reviewers would be vague and unenforceable. However, the Court also stated, "But Mullin's requested injunctive relief is not limited to prohibiting biased reviewers. Moreover, Mullin might be able to clarify or refine her requested injunctive relief ***after factual development***" (emphasis added). (Doc. 58 at 8:22-24.)

[11] For clarification on all claims, Ms. Mullin requests 25 interrogatories, 25 requests for production, 25 requests for admission *per Defendant* Omaha and HonorHealth, and 6 depositions total *against all Defendants*.

-11-

Dated this 14th Day of January, 2016.

>OBER & PEKAS, PLLC
>
>By: *s/ Erin Rose Ronstadt*
>   Erin Rose Ronstadt
>   Kristin Nicole Kalani
>   Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on January 14, 2016, I electronically transmitted the foregoing Plaintiff's Reply in Support of Her Motion to Compel Discovery to the Clerk's office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Kristina N. Holmstrom
Kathleen Kahn
LEWIS ROCA ROTHGERBER CHRISTIE LLP
201 E. Washington Street, Suite 1200
Phoenix, AZ 85004-2595
kholmstrom@lrrc.com
kkahn@lrrc.com
*Attorneys for Defendants United of Omaha Life Insurance Company and Scottsdale Healthcare Corporation Long Term Disability Plan*

Robert M. Goldich
Dana L. Hooper
GREENBERG TRAURIG, LLP
2375 East Camelback Road, Suite 700
goldichR@gtlaw.com
hooperd@gtlaw.com
*Attorneys for Defendant HonorHealth*


*s/ Ashley Porter*