IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cynthia Susan Mullin,<br><br>               Plaintiff,<br><br>v.<br><br>Scottsdale Healthcare Corporation Long Term Disability Plan, et al.,<br><br>               Defendants. | No. CV-15-01547-PHX-DLR<br><br>**ORDER** |

Before the Court is Plaintiff, Cynthia Mullin's Motion to Compel Discovery. (Doc. 50.) The motion is fully briefed. For the following reasons, Mullin's motion is granted.

## **BACKGROUND**

This action arises under the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* (Doc. 1, ¶ 1.) Plaintiff Cynthia Mullin formerly worked as a nurse for Defendant HonorHealth. (*Id.*, ¶¶ 3, 18, 47.) She participated in and was a beneficiary of the Scottsdale Healthcare Corporation Long Term Disability Plan ("the Plan"), an ERISA benefit plan offering long-term disability ("LTD") benefits for HonorHealth's[1] employees. (*Id.*, ¶¶ 2-3.) Defendant Omaha insures and administers the Plan's LTD benefits. (*Id.*, ¶¶ 8-9.)

---

[1] Scottsdale Healthcare ("SHC") merged with John C. Lincoln in 2013 to create HonorHealth in 2014. (Doc. 1, ¶¶ 3-4.) SHC first established, administered, and sponsored the Plan; HonorHealth now performs these functions. (*Id.*, ¶¶ 5-6.)

In March 2014, Mullin was involved in a motor vehicle accident that aggravated her existing medical conditions. (*Id.*, ¶¶ 20, 31, 34, 36.) She applied for short-term disability ("STD") benefits, which Omaha approved. (*Id.*, ¶ 34.) After Mullin exhausted her STD benefits, Omaha reviewed her claim to determine whether she was eligible to transition to LTD benefits. (*Id.*, ¶ 37.) Omaha denied Mullin's claim in September 2014. (*Id.*) Mullin administratively appealed, and in June 2015, Omaha upheld its denial. (*Id.*, ¶¶ 40, 46.) Thereafter, HonorHealth terminated Mullin's employment because her leave had been exhausted and LTD benefits denied. (*Id.*, ¶ 47.)

Mullin brought this action in August 2015, alleging that she was wrongfully denied LTD benefits and that Omaha and HonorHealth breached various fiduciary duties. Omaha's Motion to Dismiss, which was directed at Count II, was denied, as was its request to stay discovery on Count II until the Court determines whether Mullin is entitled to LTD benefits. (Doc. 58.)

In their Joint Case Management Report, the parties described a discovery dispute. The Court ordered the parties to brief their respective positions on discovery. Mullin's Motion to Compel was filed pursuant to that order.

## ANALYSIS

**I. Discovery Related to Mullin's Denial of Benefits Claim**

Omaha concedes that it has a structural conflict of interest as the administrator and funder of the Plan's LTD benefits. Mullin claims that, despite Omaha's concession, discovery beyond the administrative record is necessary for the Court to evaluate Omaha's structural conflict of interest. The Court agrees. In *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955 (9th Cir. 2006), the Ninth Circuit analyzed the standard of review established by the Supreme Court in *Firestone Tire & Rubber Co. v. Burch*, 489 U.S. 101 (1989), for ERISA cases in which plan administrators have denied benefits. The Ninth Circuit confirmed that the standard of review is de novo when the plan does not confer discretion on the administrator, and abuse of discretion if the plan does confer discretionary authority. *Abatie*, 458 F.3d at 962-963. The Court explained that, when

the district court decides how much or how little to credit the plan administrator's reason(s) for denying insurance coverage, it must weigh the conflict of interest as a factor. *Id.* at 968. "An egregious conflict may weigh more heavily (that is, may cause the court to find an abuse of discretion more readily) than a minor, technical conflict might. But in any given case, all the facts and circumstances must be considered . . . ." *Id.* The Court recognized that, when reviewing under the abuse of discretion standard, the district court ordinarily is limited to the administrative record, but may consider evidence outside the record when deciding how much weight to give a conflict of interest. *Id.* at 969-70.

Here, for the Court to evaluate the nature and extent of the conflict of interest and to determine how much weight to give it, evidence outside the record might be relevant. For example, evidence such as financial incentives (or the lack thereof) in the Plan's organization, which is not in the record, could be important evidence for the Court to consider when deciding how much weight to afford the conflict of interest.

Mullin claims that her complaint is replete with examples of Omaha's bias as a result of its conflict. In her motion, she gives an example of an irregularity in the claim file. She claims that Omaha's failure to consider her job description when denying her disability claim demonstrates extreme bias. Omaha argues that evidence outside the record is not discoverable unless Mullin is able to show a nexus between the structural conflict and irregularity in the claim file. *Abatie* rejected that argument. *Id*. at 967. Pursuant to *Abatie,* Mullin is entitled to discover the extent of the conflict of interest as it pertains to Count I as follows:

1. Employee or consultant financial incentives to deny Mullin's claim;
2. Omaha's overall approval and termination rates of LTD claims;
3. Omaha's approval and termination rates for LTD claims involving Mullin's medical conditions;
4. The frequency with which Omaha contracts with the vendors, including file reviewers and evaluators, employed in Mullin's claim;

5. The steps Omaha has taken to mitigate the conflict;

6. Defendant's contractual relationship and the Plan's organization as it pertained to the STD and LTD Plans both prior to and after the merger of SHC and John C. Lincoln in 2013;

7. Omaha's policies, procedures, and guidelines for evaluating the transition from STD to LTD benefits, and for its other claims processes used in evaluating claims;

8. Matters submitted, generated, or considered by Omaha in denying Mullin's claims that are not in the administrative record, whether or not such information was relied upon in making the benefit determination; and

9. Evidence outside the administrative record that Omaha intends to offer to show that the structural conflict of interest did not affect its decision to deny LTD benefits to Mullin.

## II. Discovery Related to Mullin's Breach of Fiduciary Duty Claims

Mullin also brings claims under 29 U.S.C. § 1132(a)(3) for alleged breaches of fiduciary duty. Mullin alleges that HonorHealth breached its fiduciary duty to her by failing to oversee Omaha's claims administration. She claims to have reason to believe that HonorHealth terminated its relationship with Omaha because of the structural conflict of interest, and because HonorHealth discovered Omaha was cheating its employees. Mullin also claims that, while Omaha was still administrating the claims, it was aware that the relationship was being terminated and had an incentive to terminate accrued claims.

Additionally, Mullin alleges that University Disability Consortium ("UDC") was used by Omaha in a majority of denials, that the UDC reviewers on her claim have been used on numerous occasions to conduct claims reviews, and that it has a history of bias against claimants. She seeks removal of UDC and MLS Group of Companies, Inc. ("MLS") as vendors for Omaha.

Although Mullin's discovery as to Count I is limited to conflict discovery, her breach of fiduciary duty claims are not. *Moran v. Life Ins. Co. of N. Am. Misericordia*

*Univ.*, No. 3:CV-13-765, 2014 WL 4251604, at *9 (M.D. Pa. Aug. 27, 2014). The Court finds that Mullin is entitled to additional discovery pertaining to her breach of fiduciary duty claims as follows:

1. Omaha's use of independent medical examinations on appeal, including but not limited to Mullin's claim, and its companywide policies and procedures for doing so;
2. Omaha's tolling of ERISA-mandated deadlines on appeal, including but not limited to Mullin's claim, and its companywide policies and procedures for doing so;
3. Omaha's companywide use of UDC and MLS in the evaluation of fully insured LTD claims; and
4. Omaha's application of LTD Plan terms to claims under the Plan.

Omaha argues that the "Compensation Plan criteria" and training documents sought by Mullin are trade-secret, subject to heightened protections, and not discoverable unless Mullin can show that her case will be significantly harmed without the use of the proprietary information. (Doc. 55 at 14.) The Court finds that company policies that pertain to employee compensation criteria or standards in effect during the pendency of Mullin's claim and employee training are relevant to the breach of fiduciary duty claims and, thus, discoverable.

The Court agrees with Omaha that the "Compensation Plan criteria" and training documents sought by Mullin are trade-secret propriety information and should be protected from public disclosure. A protective order is necessary to protect unwarranted public disclosure of propriety information ordered herein. The Court also agrees with Omaha about the private nature of employee personnel files. However, information in the files pertaining to job descriptions, W-2s and/or W9s, employee performance goals and targets, and compensation plans is relevant and may be disclosed in a manner that is not intrusive. The disclosure of the above-described employee file information for the seven employees identified by Mullin shall be made with all identifying information,

including names, removed. If Mullin finds information that she believes is necessary for additional discovery, or for any other reason feels the identification of the employee is necessary, she can later move for such disclosure.

Finally Omaha argues that the low value of the case does not justify the expensive discovery Mullin seeks. Omaha contends that Mullin's claim is for less than $100,000. Mullin points out that the monthly benefit she seeks is $5,650 and that if she remains eligible she will receive benefits until August 2035, a benefit with a potential value in excess of $600,000. Omaha has not supplied the Court with any information about the burden or costs of producing the requested documents. The Court finds that the discovery requested is appropriate, not burdensome, and not grossly disproportionate to the needs of the case. Accordingly,

**IT IS ORDERED** that Mullin's Motion to Compel Discovery, (Doc. 50), is **GRANTED** as explained herein.

Dated this 28th day of January, 2016.

Douglas L. Rayes
United States District Judge